**In Re the Marriage of Fred P. ROYAL, Respondent,**

v.

**M. Nadine ROYAL, Appellant.**

No. WD 31666.

Missouri Court of Appeals, Western District.

May 26, 1981.

John J. Phillips, Independence, for appellant.

June A. Short, Jr., Independence, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

This proceeding originated under a petition for dissolution. The answer to the petition denied that the marriage was irretrievably broken and was accompanied by a counterclaim for legal separation. The circuit court entered its decree ordering legal separation, the division of marital property and limited maintenance. The judgment is affirmed as modified.

Appellant (wife) claims (1) that the evidence was insufficient to support a finding that the marriage was irretrievably broken as a matter of law or in satisfaction of the requirements of § 452.320(2), RSMo 1978; (2) the court erred in the equal apportionment of the marital property and (3) the evidence failed to support a showing of impending change of conditions so as to support the award of limited maintenance.

Respondent filed his petition for dissolution on June 5, 1979. Appellant filed her answer, denying that the marriage was irretrievably broken and filed a counterclaim which prayed for legal separation in the alternative if the court determined the marriage to be irretrievably broken. The parties separated on March 1, 1979. Four children were born of this 31-year marriage and all were emancipated at the time these proceedings commenced.

Respondent is a 25-year employee of the federal government, with an annual income of $22,000. At the time of the hearing herein, he also had a part time job which netted him an additional $350 per month. Appellant is an expert sales person, and her income for 1978 was $11,000.00. The parties accumulated no savings through the years.

Although the parties disagreed as to the precise time involved, the evidence reveals that the marriage had deteriorated within the last few years. In support of his petition, respondent testified that appellant violently screamed at him and the children, belittled and cursed him in front of the children and refused to associate with any of his friends. Because of this refusal, respondent found himself alienated from his friends. He testified that on several occasions, appellant told him to get out of the house. He stated that he had to do all the washing, ironing and most of the grocery shopping, and added that his sensibilities were offended by having to purchase certain personal items for his wife. A witness who was a friend of both parties testified that appellant humiliated and degraded respondent in the presence of friends.

Appellant considered their marriage to have been a beautiful one during the first 28 or 29 years, but felt that as her husband reached his 50th birthday, his attitude toward her and the children changed. Appellant stated that she was too busy working to socialize with respondent's friends, but that on those occasions in which they did, she was often left alone and felt uncomfortable while respondent socialized with others. She also pointed out that in 1978, respondent one morning told her, "I don't love you anymore; I want out." She said that respondent "more or less" admitted to having an affair with a co-worker and that she reacted to that statement, saying, "Go, who needs you?"

Respondent denied that he was romantically involved with another woman. The only other evidence on this point was by deposition testimony of a psychiatrist who had met with both parties. This psychiatrist stated that respondent admitted to seeing another woman, but that the extent of that involvement was not explained.

Appellant contended that her husband's description of her behavior was exaggerated. She said she told him to leave the house only once, but admitted that she had, in front of family and friends, admonished her husband to "stand on his two feet" and to make his own decisions.

After separation, appellant, on the advice of the psychiatrist, entered the hospital. She was suffering from depression caused by the marital problems. While hospitalized, appellant underwent a hysterectomy. She was released in June, 1979 and returned to a 20-hour work week in November, 1979. Both prior and subsequent to that separation, there were encounters between the parties which were bitter and included physical violence. Despite this fact, appellant testified that she still loved respondent and felt that their marriage could be saved.

At the commencement of the proceedings and her formal pleadings, appellant filed a written request for specific findings of fact and conclusions of law. The court entered the same in support of its decree. The circuit court declared the marriage irretrievably broken upon the evidence of physical and emotional mistreatment and the emotional instability of appellant supported by the testimony of the psychiatrist. The circuit court specifically noted that appellant had belittled respondent, had been unwilling to socialize with respondent's friends and that over a long period of time, respondent had been required to do all his own laundry and ironing.

On February 22, 1980, the circuit court entered its decree of legal separation under appellant's counterclaim, divided the marital property and awarded appellant limited maintenance. On March 24, 1980, the circuit court entered a modified decree of legal separation, which stated that the husband had satisfied the court upon the evidence that respondent (appellant herein) "... has behaved in such a way that the Petitioner (respondent herein) cannot reasonably be expected to live with the respondent ..." The modified decree ordered the marital residence sold and the proceeds divided in such a manner that when added to the value of other personal property, each party would receive exactly 50% of the total marital property. The court found that neither party was entitled to statutory maintenance, but did rule that appellant was in need of maintenance for one year to supplement her income and to cover medical expenses. Appellant was awarded $5,000.00 maintenance and $1,300.00 to cover anticipated medical costs. This appeal followed.

■ The review of this matter is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and the decree of the trial court will not be disturbed unless there is no substantial evidence to support it or unless it erroneously declares or applies the law.

For her first point of error, appellant argues that the evidence, as a matter of law and because it fails to satisfy statutory requirements, was insufficient to support the court's finding that the marriage was irretrievably broken.

■ This court has reviewed the record, which contains evidence of bitter and physically violent confrontations between the parties. Appellant belittled respondent in front of his friends and criticized respondent in front of the children. The record displays an emotional instability on appellant's part and her refusal to associate with respondent's friends. In addition, the record reflects the performance of daily duties by one party as opposed to a cooperative attitude by both parties to the marriage. It cannot be said that the evidence fails to support the finding by the trial court that this marriage is irretrievably broken either as a matter of law or upon failure to satisfy the requirements of § 452.320(2). Further, it cannot be said that the evidence fails to support the finding by the trial court that appellant has behaved in such a manner that respondent cannot be reasonably expected to live with her. There is substantial evidence to support the court's finding and it neither erroneously declares or applies the law. Point (1) is found to be without merit and is ruled against appellant.

In her point (2), appellant argues that since the evidence shows respondent's involvement with another woman and hence portrays him as the wrongdoer, the equal or 50% division of marital property by the trial court was error. Appellant argues that the marital residence should have been awarded to her instead of being ordered sold and the proceeds divided.

The trial court is accorded broad discretion in the division of marital property and awarding maintenance. This court will not disturb such awards unless they are clearly untenable under the facts and circumstances of the case. See *Daus v. Daus*, 595 S.W.2d 19 (Mo.App.1979); *In re Marriage of Brewer*, 592 S.W.2d 529 (Mo.App.1979); *In re Marriage of Schulte*, 546 S.W.2d 41 (Mo. App.1977) and *Beckman v. Beckman*, 545 S.W.2d 300 (Mo.App.1976).

■ In the performance of its statutory duties, the trial court is required to make a "just" and not necessarily equal division of the marital property, and the conduct of the parties during marriage is one of the factors to be assessed, see *Pederson v. Pederson*, 599 S.W.2d 51 (Mo.App.1980); *Beckman v. Beckman, supra*, and § 452.330.1(4), RSMo 1978.

In addition to the alleged marital misconduct of respondent, appellant argues that she should have received the marital residence because of a statement made by her psychiatrist during deposition that the loss of the family home would intensify her depression. Examination of that testimony shows it at best to be equivocal and not supportive of appellant's allegation.

■ The record fails to support any evidence that respondent was *amorously* involved with another woman. In fact, all evidence on this point indicates that any involvement that did occur was minor and took place late in the marital relationship; therefore, it cannot be said that such conduct was a major factor in destroying the marital relationship between the parties. While marital misconduct is not limited to financial misdeeds and may justify a disparate division of marital property, *Smith v. Smith*, 552 S.W.2d 321 (Mo.App.1977), misconduct is not a basis for punishing one spouse, see *In re Marriage of Carmack*, 550 S.W.2d 815 (Mo.App.1977), or for awarding inadequate marital property to an offending spouse, see *Givens v. Givens*, 599 S.W.2d 204 (Mo.App.1980). Misconduct is a crucial factor, when under given facts and circumstances, the conduct of one spouse creates burdens for the other beyond those normally expected in the marital relationship, *Burtscher v. Burtscher*, 563 S.W.2d 526 (Mo. App.1978). The evidence of respondent's alleged misconduct, being both questionable and of a relatively minor nature, fails to show that it was an extreme burden on appellant. In addition, the evidence reveals that there was objectionable behavior by both parties. The evidence does not support, as claimed by appellant, a finding that a more generous award of the marital property should be made to appellant. Under the facts and circumstances of this case, this court should and does defer to the trial court, see *Hegger v. Hegger*, 596 S.W.2d 479 (Mo.App.1980).

The evidence supports the trial court's finding and division of the marital property in equal shares. Point (2) is found to be without merit and is ruled against appellant.

For her final point, appellant argues that the trial court erred in awarding only limited (one year) maintenance to her because the evidence failed to show an impending change of conditions which would authorize the court to prospectively terminate maintenance.

■■■ The determination of maintenance is within the broad discretion of the trial court and an award or denial thereof will not be disturbed unless there is a showing of an abuse of that discretion. An award of maintenance arises when (1) one spouse lacks sufficient property (including the apportioned marital property) to provide for his/her reasonable needs and (2) is unable to support himself/herself through appropriate employment, see *J. A. A. v. A. D. A.*, 581 S.W.2d 889 (Mo.App.1979) and § 452.335.1(1) and (2), RSMo 1978. Several factors should be considered in awarding maintenance and determining the duration thereof. These include the financial resources of the spouse seeking maintenance, the time/expense necessary to acquire additional education/training to secure appropriate employment, the standard of living enjoyed during the marriage, the duration of the marriage, the age, physical and emotional condition of the spouse seeking maintenance, the ability of the spouse from whom maintenance is sought to meet both his/her own needs as well as maintenance payments and the conduct of the party seeking maintenance. These factors are to be tempered by a policy of encouraging the self-sufficiency of the parties following separation, see *Brueggemann v. Brueggemann*, 551 S.W.2d 853 (Mo.App.1977). A trial court is vested with the discretion of limiting the duration of maintenance where there is evidence of or at least a reasonable expectation of an impending change in the financial condition of the parties. See *In re Marriage of White*, 601 S.W.2d 644 (Mo. App.1980); *Poague v. Poague*, 579 S.W.2d 822 (Mo.App.1979) and *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.1975).

■■■ As mentioned above, neither party was awarded periodic maintenance, but appellant was awarded gross maintenance in the sum of $5,000.00, payable in 12 monthly installments, and an additional $1,300.00 to cover medical costs over the same period of time. Such an award, sometimes referred to as "rehabilitative maintenance" was apparently based on testimony at trial that appellant was then able to work only part time at her sales position because of physical and emotional difficulties. Appellant felt that she would not be able to find living accommodations comparable to the mortgage costs currently paid on the residential property, and that she could not estimate how long it would take to acquire the amount of customers she had before she was hospitalized. In addition, the psychiatrist testified by deposition that about one year of therapy would probably alleviate appellant's depression.

Appellant is an expert sales person with extensive training and work experience, therefore justification based upon need for education and training is not shown, see *In re Marriage of White, supra*, and *Pederson v. Pederson, supra*. In the past, she has experienced annual earnings of $11,800, and although the evidence does not indicate that appellant could hope for another offer of the position of district sales manager, the record does show that in the past three to four years, she was offered such positions at an annual salary of $14,000. Past and prospective earnings are proper factors to consider. *Raines v. Raines*, 583 S.W.2d 564 (Mo.App.1979). Appellant has no need for child support, has no indebtedness arising from the marital relationship and has only her individual needs to meet. At the time of these proceedings, she was employed at least part time. In addition, under the decree she receives an equal (50%) share of the marital property, see *Butler v. Butler*, 562 S.W.2d 685 (Mo.App.1977). There is no evidence of a high standard of living during the marital relationship, nor does the evidence support any finding that respondent's

income is large enough to justify generous periodic maintenance. See *LoPiccolo v. LoPiccolo,* 547 S.W.2d 501 (Mo.App.1977).

Determination of this issue must be based on something other than speculation regarding the expected financial conditions of the parties, see *In re Marriage of Wofford,* 589 S.W.2d 323 (Mo.App.1979). Appellant argues that the evidence is not substantial to support an inference that she will be self-sufficient because of an impending change of financial conditions during or upon the lapse of one year. Appellant could not advise the trial court how long it would take to rebuild her sales clientele. She indicated she was capable of working only part time because of physical and emotional limitations. In support of appellant's testimony, comments regarding possible future hospitalization for physical problems were offered by the psychiatrist who testified that appellant's depression could possibly be alleviated within one year following treatment during that period. Respondent offered no evidence to refute appellant's contention of this point. Under the evidence, it cannot be concluded that appellant's health, emotional status or employment will be such that she will be self-supporting. The evidence on this issue is inconclusive as to cause this court to modify the decree of the circuit court on the award of limited maintenance. Section 452.335.-2(5) authorizes maintenance based upon age, and the physical/emotional conditions of the party seeking maintenance. That portion of the order concerning the maintenance award of $5,000, plus medical expenses in the sum of $1,300.00 for one year is affirmed. The limitation of that sum is affixed at one year, but the order, concerning terminating all maintenance after one year, is hereby modified to provide that after the expiration of one year, appellant shall be entitled to the sum of one dollar ($1.00) per annum as maintenance until further modified by the circuit court upon good cause shown.

For the foregoing reasons the judgment is in all respects affirmed as modified.

All concur.