Patrick Elwyn PHELPS, Respondent,

v.

Chau PHELPS, Appellant.

No. WD 31313.

Missouri Court of Appeals, Western District.

Aug. 18, 1981.

Les D. Wight, Independence, for appellant.

David Edw. Martin, Independence, for respondent.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

In this dissolution of marriage case, five issues are presented: (1) Whether the trial court abused its discretion in denying an award of periodic maintenance to appellant when the marriage had lasted for 7 years and the evidence showed appellant was entitled to that award; (2) whether the trial court abused its discretion in providing for the prospective termination of maintenance (in gross) when, as contended, there was no evidence of impending change, or reasonable expectation of change, in the financial condition of the parties; (3) whether the trial court erred in denying appellant's motion for new trial on the ground of newly discovered evidence; (4) whether the trial court erred in permitting respondent to satisfy $6,660.00 of the $10,800.00 gross maintenance by transferring to appellant his one-half share of marital property, because, as contended, there was a failure to consider whether respondent was entitled to a one-half share of the marital property under § 452.330, RSMo 1978, and that awards of specific property in lieu of *alimony* are not permitted under Missouri law; and (5) whether the trial court erred in failing to ascertain, describe, value or set apart each party's property in a manner sufficient actually to obtain a separation of property interests or obtain enforcement of the decree.

The parties met in South Vietnam where respondent was stationed in the Military Service, appellant being then a Vietnam National, having a young daughter by a previous marriage. Respondent arranged for appellant and her young daughter, then about 3 years of age, to come to the United States, and the parties were married March

25, 1972, in Fargo, North Dakota. Appellant was then 21 years of age. After respondent's tour of duty in Vietnam ended, the couple had two other military duty stations for about 30 months, during which time a daughter was born on November 12, 1974. About a year later, they moved to Independence, Missouri, where they resided until separated, which was about August 25, 1978.

Appellant did not have the equivalent of a high school diploma. While the parties were on military duty, she was unable to seek employment, but she did contribute as a homemaker. She did have a marketable skill of sewing, and using that, she obtained a job doing alterations for J. C. Penney Co. at $3.60 per hour in 1976, working there on and off for 2½ years, but missed almost 5 months time after surgery following a tubal pregnancy. Appellant left Penney's in December, 1978, after respondent insisted that she accompany him on a vacation in Minnesota when that company had a policy prohibiting vacations between Thanksgiving and New Year's days. Respondent conceded that he encouraged appellant to leave the employment. Subsequently, appellant obtained employment at J. P. Todd's as a seamstress at $5.00 per hour for two two-month periods only. During the marriage, her earnings went to support the family and household. Just prior to trial, she purchased a commercial sewing machine so she could do home sewing, but she had earned only $8.00 therefrom at the time of trial.

Appellant had twice tried to obtain a G.E.D. high school equivalency diploma, but was interrupted, first by family care obligations, and then by being recalled to work at J. P. Todd's. Both parties were of the opinion that appellant had emotional problems, and she had visited a mental health clinic, took nerve pills, and had two sessions with a psychiatrist who told her she needed to return six more times. Respondent was advised by a caseworker that appellant needed counselling and he paid for one session and agreed to pay for another.

Respondent agreed that appellant should occupy the marital home. He testified that it had been appraised at $26,500 in 1977, and she testified it was worth $25,000. There was about $18,500 owed on the home, with payments thereon of about $197.00 per month. Appellant concedes in her brief that their testimony generally supported their statements of marital and non-marital property, income and expenses. The trial court found the value of the marital property to be $13,320.00, and neither party challenges that valuation. $10,800.00 was awarded appellant as maintenance in gross, and it was decreed that respondent might satisfy $6,660.00 of the maintenance in gross, by transferring his one-half interest in the marital property, which apparently he did. The remaining amount of maintenance in gross ($4,140.00) was ordered paid by respondent at $175.00 per month on the 13th day of every month [which would be about 23 months until paid in full]. Respondent was ordered to pay $200.00 per month as support for the one child born of the marriage.

Respondent's net income, after tax deductions, as an assistant signal maintainer for the Burlington Northern Railroad, was $1,059.18 per month. He received also $104.00 per month from the National Guard. He testified that his cost to maintain himself was $900.00 per month. Thus, adding $200.00 per month child support and $175.00 per month payment on the balance of maintenance in gross, makes his total outlay $1,275.00 per month, which would be about $111.00 more than his net income.

Appellant, at the time of trial, had income of $475.00 from respondent, and $83.00 per month unemployment compensation, which would soon cease. According to her statement, of income (none) and expenses, received into evidence, appellant's monthly expenses are these: Mortgage payments—residence, $197.00; Utilities, $114.00; Automobile, $185.00 [including $98.00 payments on a Nova by respondent, which would then be paid in full in 3 or 4 months]; Insurance, $137.00; Food, clothing, medical care, dental, recreation, laundry and dry cleaning, school and books, $150.00. The total was $1,201.00 per month,

but $98.00 should be deducted to reflect the elimination of the Nova payment, or a total of $1,103.00 per month. Appellant testified that it would be more expensive to live in quarters other than the family home. She could complete the G.E.D. equivalency course in two years if she did not work.

What this record shows is that the parties jointly have much more living expenses than the income of respondent will cover, at the time of trial. The trial court's remark that this is one of the cases in which there is no satisfactory answer is therefore entirely justified. At that time was the unknown amount of income which appellant could generate from her sole skill as a seamstress. She had at times earned $3.50 an hour, and $5.00 an hour, which could be a gross income to her of $480.00 to $800.00 per month, should she be able to gain that full-time employment. But, as of the time of trial, appellant's prospect of full-time employment was purely speculative, and her earnings from homework on the sewing machine she purchased is likewise speculative. Appellant had one-half of the marital property awarded to her, and acquired the other one-half interest from respondent in satisfaction of a portion of the award of maintenance in gross. She is not, however, required to use her marital property for living expenses. *Givens v. Givens*, 599 S.W.2d 204 (Mo.App.1980); *In re Marriage of Lindenfelser*, 596 S.W.2d 71 (Mo.App. 1980). None of the property now belonging to appellant is income-producing. As noted, payments on the balance of the amount due on the award of maintenance in gross will cease in about 23 months, and appellant may thereafter have nothing by way of support. In the interest of social welfare and justice, it is the duty of a husband, insofar as he is able, to contribute such amount as will, supplemented by the wife's earnings, enable her to maintain a standard of living measuring up to that enjoyed at the time of dissolution. *Reeves v. Reeves*, 399 S.W.2d 641, 650[14, 15] (Mo.App.1966), and cases cited; *Adkins v. Adkins*, 325 S.W.2d 364 (Mo.App.1959). It is, of course, an affirmative duty of a spouse seeking maintenance to seek employment. *Brueg-*

*gemann v. Brueggemann*, 551 S.W.2d 853, 858[6] (Mo.App.1977). Under this record, the decree should be modified to provide appellant periodic maintenance in nominal amount so as to accord her the opportunity to modify the award as her future circumstances may require, with consideration for all factors including those of respondent as to his then ability to meet her needs, if any then exist. It is competent for an award to be made of both periodic maintenance and maintenance in gross. *Hawkins v. Hawkins*, 511 S.W.2d 811, 813[2] (Mo.1974); *Carr v. Carr*, 556 S.W.2d 511, 512 (Mo.App.1977); *Warren v. Warren*, 601 S.W.2d 683, 686 (Mo.App.1980), footnote 1. This disposes of appellant's issues (1) and (2) above.

As to appellant's claim that the trial court erred in denying her after-trial request to present newly discovered evidence, the affidavit in support of the motion relates to her need for medical attention occurring after the trial which would affect her ability to earn a living and financially support herself and her minor children. Appellant's physical and mental condition were gone into in some extent during trial, but if that situation exists in the future, it may be considered in connection with a motion to modify the periodic maintenance herein awarded. Issue (3) is ruled against appellant.

The trial court found there was no fault on either party and divided the marital property equally, then permitted respondent to satisfy $6,660.00 of the $10,800.00 gross maintenance award by transferring his one-half share of the marital property to appellant. Thus, she now owns all of the marital property, and although the decree did not specify, she has the right, as owner, to occupy the residence. Although there was an unenforceable judgment in *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270 (Mo. App.1979), because an order for the husband to pay the wife $10,000 if he failed to cause title to real property to be conveyed to the wife, was conditioned on a prior event to an execution, the court noted that the arrangement was an innovative ap-

proach to a division of property. Contrary to what appellant contends, the court found, as noted, that there was no fault on the part of either party and that the property belonged equally to them. Thus, there was a finding that respondent was entitled to one-half. Appellant does not contend that the valuation of marital property, $13,-320.00 is in error. It does not, therefore, appear that she could have been prejudiced in her acquisition of the entire interest by a conveyance to her of respondent's one-half interest in consideration of the credit upon the award for maintenance in gross. The marital property was identified and disposed of by one final adjudication of the property rights between the spouses, thus discouraging continued rancor as to that aspect of the dissolution proceedings. See *Hopkins v. Hopkins*, 597 S.W.2d 702, 706 (Mo.App.1980). The property interests are separated and are final. The decree recites that respondent *has* satisfied $6,660.00 of the maintenance award by transferring his one-half interest in the marital property. This court may not go behind the recital of the decree. If, however, as appellant suggests, that is not a fact but only a portion of the property that was transferred to her, she may move the court to require respondent to comply with the decree.

The judgment is reversed and the case remanded with directions to enter a decree of periodic maintenance in the amount of $1.00 per year to appellant. In all other respects, the judgment is affirmed.

All concur.