In re the MARRIAGE OF James Clayton GOODDING and Kathleen Goodding.

James Clayton GOODDING, Respondent,

v.

Ruby Kathleen GOODDING, Appellant.

No. WD 34629.

Missouri Court of Appeals, Western District.

July 3, 1984.

As Modified Sept. 11, 1984.

Thomas M. Schneider, Columbia, for appellant.

W.F. Daniels, Fayette, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The wife appeals from a decree of dissolution. James and Kathy Goodding mar-

ried in August, 1963 and separated in May of 1982. The couple married upon graduation from high school, both went to college earning degrees, James entered the military service, and sometime before 1969 the couple moved back to Missouri. Their three children were born in 1971, 1972 and 1974. Custody of these minor children was awarded to the appellant Kathy without dispute by James. James filed in this court a notice of appeal apparently being dissatisfied with the portions of the judgment relating to his visitation rights. His cross-appeal was consolidated with that of Kathy. James never filed an appellant's brief. Rule 84.04(j). His appeal is treated as abandoned for failure to comply with Rule 84.08, and is dismissed. Rule 84.27. *M.H. Siegfried Real Estate, Inc. v. Renfrow*, 592 S.W.2d 488, 494 (Mo.App.1979).

Respondent James has worked for Associated Electric for the past seven years. In 1982 he received a yearly gross income of $45,478.00. Losses from farming taken from Schedule F of IRS form 1040 totaled $5,934.00 in 1981. In addition he receives $655 monthly in nontaxable disability benefits from the Veterans' Administration. Kathy was 37 years old at the time of trial, has a Bachelor of Science in Education with an emphasis upon secondary education, and is certified to teach Spanish, French and biology. Sporadically at the beginning of the marriage she worked as a waitress, secretary, clerk, accountant and teacher, with an average duration of six months at a job due to her husband's transfers in the military service. The record does not disclose exactly when James entered or left the military, but it can be surmised his military career began sometime after college and ended sometime before 1969. For the last eleven years of the marriage Kathy was homemaker only, and was not employed outside the home. Since the couple's separation she has worked as a substitute teacher earning $50 a month, and had applied for full-time teaching jobs without success. At the time of the separation she experienced health problems in that she had a breast tumor which required surgical removal. The tumor was found benign.

She also had suffered from blackout or fainting spells. The evidence did not disclose whether future medical problems could be expected.

James left the home in May 1982 and moved in with a woman he had met at Eastertime of that year. In June, a month before he filed this suit, he drove his wife to Columbia, Missouri for neurological tests and surgery for her breast tumor. During the car ride, James produced a separation agreement providing for disposition of the couple's property. He told her she was making a big deal of the surgery and proceeded to induce her to sign the agreement. The agreement would have allowed the parties to continue ownership of the farm, with the wife living in the house and the husband continuing farming the remaining acreage. Kathy and the children would live in the house until the children were emancipated, James would pay taxes, insurance and maintenance—when sold the proceeds would be evenly divided. James agreed to pay $150 per child in support. The trial court found the separation agreement to be unconscionable both in its terms and the circumstances under which it was executed and did not consider it binding.

Kathy devoted much of her evidence at trial towards detailing her husband's insensitivities towards herself and the children, and his unwillingness to work towards repairing their marriage. This opinion need not repeat those incidents.

James reported under oath an average monthly income in 1982 of $2,576.00 (excluding $655.00 in VA disability benefits), and average monthly expenses for utilities, automobile, insurance, church contributions, food, clothing, medical and dental care, home repairs, recreation, Christmas gifts and vacations totalling $1,402.00. Adding $1,155.00 in temporary maintenance and support his expenses totalled $2,557.00. Kathy reported her monthly income as $1205.00. Included within that total is $1,155.00 received from James in temporary support. Her average monthly expenses, including utilities, automobile, insurance, church contributions, food, clothing, medical and dental care, school, home

repairs and upkeep, totalled $2,276.00. $1,200.00 of this sum is spent on the children's needs. Absent from this budget is any amount for housing for her and the three children, presumably because she expected to be awarded or at least allowed to live in the family home.

The court awarded Kathy maintenance of $200 per month for a period of one year unless she earlier remarried or obtained a full-time job, and a total $600 monthly child support. The marital property was divided in the following manner. The court made no specific findings of fact as to the value of the property, and therefore the values supported by the record will be used. Except as noted in two instances, the parties were in agreement as to values.

| TO HUSBAND | VALUE |
|---|---|
| 1979 GMC Pickup | $ 4,500.00 |
| Life Insurance (Cash value) | 1,000.00 |
| 50 Bushels Wheat | 150.00 |
| 5 US "E" Bonds | 125.00 |
| Certificate of Deposit | 2,500.00 |
| 1/2 interest in remaining property | 55,902.00 |
| (Total) | $64,177.00 |

| TO WIFE | VALUE | WIFE'S VALUE |
|---|---|---|
| 1976 GMC Jimmy | $ 3,500.00 | $ 3,000.00 |
| Household Goods | 7,780.00 | 5,050.00 |
| JD Garden Tractor | not specified | |
| Three 20" Bicycles | nominal | |
| 1 head of cattle | not specified | |
| Certificate of deposit | 2,500.00 | |
| 1/2 interest in remaining property | 55,902.00 | |
| (Total) | $69,682.00 | $66,452.00 |

The court presumably treated James' monthly receipt of $655.00 in VA disability benefits as his separate property. The VA pension is not mentioned in the decree. Since request was untimely no findings or conclusions were made. The court found all of the personal and real property not specifically disposed of in its decree of dissolution as not divisible in kind and ordered its sale, with the proceeds to be divided equally between the parties. This order of sale included 140 acres of farm property located eight miles northeast of Huntsville, where the family home was located, valued at approximately $100,000. The proceeds from the sale of the farm were to first pay off a mortgage debts of $5,300.00 plus interest, and reimbursement to James of one-half of $11,757.00 paid to FHA to discharge a lien on the property. Until the property was sold, possession of the house would remain with Kathy, farm acreage, with James.

Kathy claims the trial court erred in: (1) the division the marital property; (2) ordering the farm sold and equally dividing its proceeds; (3) awarding maintenance of only $200.00; (4) limiting maintenance to a period of one year; (5) awarding child support of only $600.00; and (6) treating the husband's VA disability benefits as his separate property.

The standard of review here is under Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Colabianchi v. Colabianchi*, 646 S.W.2d 61 (Mo. banc 1983). Due to the disposition of this appeal the second assignment of error relating to the sale of the property and the home will first be discussed. Section 452.330.1 R.S.Mo. (Cum.Supp.1983) sets forth four nonexclusive factors to be considered in a just division of marital property: (1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2)

The value of the property set apart to each spouse; (3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and (4) The conduct of the parties during the marriage. In its decree the court specifically noted its consideration of the four statutory factors. The statute does not require an equal division of property, but rather one which is just, fair and equitable under the particular circumstances of the parties. In *Re Marriage of Strelow*, 581 S.W.2d 426, 430 (Mo.App. 1979).

■ It is factor three that warrants a reversal. The trial court's order virtually ignores the basic necessity for the wife and children to obtain housing. Having no financial means to obtain this necessity, the court nonetheless ordered the property sold, with the proceeds to be divided equally. The record is completely devoid of any evidence supporting the statement in the decree that the property was not divisible in kind. As a means of accomplishing the legislature's recognition of the "desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children," courts have developed the device of allowing the custodial parent to remain in the family home until the youngest child reaches majority age, delaying its sale until that time. *See Smith v. Smith*, 561 S.W.2d 714, 718 (Mo.App.1978); *In re Marriage of Buthod*, 624 S.W.2d 119, 121 (Mo.App.1981). As noted earlier, the separation agreement found to be unconscionable would have allowed Kathy and the children to have remained in the house. This accommodation to both parties is especially just where as here the family home comprises their only major asset. Presumably the court intended the net proceeds from the wife's sale of the home to satisfy the basic necessity for the wife and children to obtain housing. *This* assumption is buttressed by the fact that the wife's reported expenses for herself and three children did not include amounts for monthly housing and therefore the support and maintenance awards did not take into account such needs. The accomplishment of this legislative end under factor three must also take into account, however, the direction by appellate courts that a present and final division of property in dissolution cases should be made. Unless evidence is presented justifying a continuation of a tenancy in common, the parties' real estate should be divided by the decree. *In re Marriage of Buthod, supra; Corder v. Corder*, 546 S.W.2d 798, 804 (Mo.App.1977); *In re Marriage of Pine*, 625 S.W.2d 942, 946 (Mo. App.1981). But see *Davis v. Davis*, 544 S.W.2d 259, 264 (Mo.App.1976) where the court said leaving real estate in a tenancy in common should not be "absolutely precluded," but "should be reserved for the unusual situation where the economics call for such a solution." Forcing a custodial parent to swallow up her share of the marital property to provide housing for herself and children, however, appears patently unjust and a result unintended by the legislature under factor three. *See Phelps v. Phelps*, 620 S.W.2d 462, 465 (Mo.App. 1981).

In her third and fourth points Kathy argues the award of $200.00 monthly maintenance for a period limited to one year constituted an abuse of the trial court's discretion and resulted from an erroneous application of the relevant statutory factors under § 452.335.2 RSMo 1978. These factors include: (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian; (2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) The standard of living established during the marriage; (4) The duration of the marriage; (5) The age, and the physical and emotional condition of the spouse seeking mainte-

nance; (6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and (7) The conduct of a party seeking maintenance during the marriage.

Kathy was only 37 years old at the time of trial, yet only one month before suit was filed had undergone major surgery. She was granted custody of all three of the couple's children. The marriage had spanned two decades. She had a college degree and teaching certificate, but this potential resource had been shelved away early in the marriage. Her only work experience outside the home consisted of six month stints at nonprofessional and hardly lucrative jobs. Her only income was $50.00 from substitute teaching, and none of the marital property allotted to her was income-generating. She should not be required to use her marital property as living expenses. *Phelps, supra* at 465.

James, on the other hand, could look forward to continue to enjoy a sizeable gross income in excess $45,000.00, not counting his disability benefits. After meeting his own monthly expenses, which included generous amounts allotted for vacations, recreation and gifts, he had an excess of $1,174.00. From this amount $800.00 would go to maintenance and child support.

■ Following separation the parties are encouraged to become self-sufficient, and an affirmative duty to seek employment rests upon the spouse receiving maintenance. *Royal v. Royal*, 617 S.W.2d 615, 619 (Mo.App.1981). Before the trial court limits the duration of maintenance some "evidence of or at least a reasonable expectation of an impending change in the financial condition of the parties" should exist. *Royal, supra,* at 619. Awards of limited duration should not be based upon speculation of the future conditions of the parties.

*In re Marriage of Powers,* 527 S.W.2d 949, 956 (Mo.App.1975). The trial judge here only had evidence that appellant had applied for teaching positions in two small rural towns. The prospects for Kathy's employment were neither reasonable nor impending, but purely speculative. Given the factors of a continued level of income for James and those prospects of Kathy there is no substantial evidence appellant will be able to meet her living expenses; therefore the provision for termination of maintenance must be reversed. *Tygett v. Tygett,* 639 S.W.2d 282, 285 (Mo.App.1982); *Lopiccolo v. Lopiccolo,* 547 S.W.2d 501, 505–506 (Mo.App.1977).

■ Kathy's sixth point states the court erred in failing to treat James' VA disability as marital property. Although the exact date is unknown, sometime afterwards the Gooddings' marriage James entered the military service. The transcript provides none of the details of James' military service, including its length or entitlement, if any, to military retirement pay, whether its termination related to James' disability, and the percentage of his disability. Another unknown involves whether the receipt of the VA benefits had been preceeded by a waiver of military retirement pay, and if so, the amount waived. *See* 38 U.S.C. § 3105 (1979).[1] All that is known is that at the time of the hearing on the motion for temporary allowances, James received $655 per month in nontaxable Veterans' Administration benefits as compensation for a service-related accident in which he received burns. According to James' testimony at the hearing, a certified copy of which was entered into evidence, the amount of the VA benefits received is dependent upon marital status and the number of children a recipient has, so that the amount would presumably decrease after the Gooddings' divorce. *See* 38 U.S.C.

---

1. 10 U.S.C. Section 1401 (1983) governs the computation of retired pay for members of the armed services. Disabled servicemen have the option of computing retirement pay on the basis of rank and length of service, or by multiplying basic pay times the percentage of disability before retirement. To receive VA benefits for service-related disability the disabled veteran must waive the right to receive the equivalent amount of retirement pay. 38 U.S.C. § 3105 (1979).

§§ 310, 315 (Supp.1982).[2] Since this item was neither valued nor specifically set off to either spouse and since there exists a strong argument this pension would be marital property a remand is necessitated to receive evidence. *In re Marriage of Mihalovich,* 659 S.W.2d 798, 800–801 (Mo. App.1983).

The threshold issue to be determined following remand concerns whether the Supremacy Clause of the United States Constitution[3] *precludes* the treatment of VA disability benefits as marital property subject to division between spouses upon divorce. If no federal preemption exists the next question is whether under Missouri law VA disability benefits are marital property under § 452.330.3. Although the law as to VA disability benefits is not clearly settled, the parties and the trial court are directed to *Pruitt v. Pruitt,* 622 S.W.2d 767 (Mo.App.1981), and *Coates v. Coates,* 650 S.W.2d 307 (Mo.App.1983). Those cases chronicle the trend of the law in this general area particularly since *McCarty v. McCarty,* 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981), which held the states were precluded from dividing military non-disability retirement pay. The rationale of preemption allowing federal law to control where in conflict with state marital law was discussed in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 583, 99 S.Ct. 802, 809, 59 L.Ed.2d 1 (1979), which dealt with U.S. Railroad Retirement Act benefits. *See also Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 63, 70 L.Ed.2d 39 (1981) (Stevens, J., dissenting).

In *Pruitt, supra,* military non-disability retirement pay was excluded as marital property based upon *McCarty.*

In response to *McCarty,* in September 1982 Congress passed the "Uniformed Services Former Spouses Protection Act" which appears in 10 U.S.C.A. § 1408. In essence this Act gives state courts the ability to divide among spouses military retirement pay according to state law. *Coates, supra,* 650 S.W.2d at 310.

These further citations may prove helpful to the parties on the preclusion issue of VA benefits: 40 Wash. & Lee L.Rev. 271 (1983); *In re Marriage of Cullen,* 145 Cal. App.3d 424, 428, 193 Cal.Rptr. 590, 592 (1983); *State ex rel. Eastern State Hospital v. Beard,* 600 P.2d 324, 325 (Okla.1979); *In re Flanagan,* 31 F.Supp. 402, 403 (D.D. C.1940); *Tibbles and Tibbles,* 665 P.2d 1267, 1269 (Or.App.1983); *In re Marriage of Milhan,* 27 Cal.3d 765, 613 P.2d 812, 818 (1980); *Karr v. Karr,* 628 P.2d 267, 275 (Mont.1981); *Stroshine v. Stroshine,* 652 P.2d 1193, 1194 (N.M.1982).

As to the pension being marital property in Missouri, the parties are directed to *Daffin v. Daffin,* 567 S.W.2d 672, 679 (Mo.App. 1978) and *In re Marriage of Weaver,* 606 S.W.2d 243 (Mo.App.1980), and *Pruitt, supra,* holding military pensions to be marital property. Attention is also called to *Kuchta v. Kuchta,* 636 S.W.2d 663 (Mo. banc 1982). This VA pension is a variable that could specifically affect support and maintenance.

In addition to the need for a determination and valuation of the VA pension, and since the time limitation on maintenance requires a reversal, and the immediate sale of the house would require a re-location of Kathy and the three children, all of which would have a ripple effect on the judgment appealed from, the following disposition is made.

Affirmed in the decree are paragraphs one, which dissolves the marriage and two, which awards custody to Kathy and spells out visitation rights for James. The first was not contested, while the second was not preserved on appeal. *Fields v. Fields,*

---

**2.** Basic entitlement for a veteran to receive disability compensation exists if the veteran is disabled as the result of personal injury or disease while in active service if the injury or disease was incurred or aggravated while in the line of duty. 38 U.S.C. § 310, 331 (1979); 38 C.F.R. § 3.4(b) (1983). Additional compensation may be payable to spouses and dependent children where the disability rating is at least 30 per centum. 38 U.S.C. § 315 (Supp.1982); 38 C.F.R. § 3.4(b)(2) (1983).

**3.** U.S. CONST. Art. VI cl. 2.

584 S.W.2d 163, 166 (Mo.App.1979); also affirmed is paragraph five which orders certain personal property sold and divided equally or set off to the parties.

Those portions reversed and remanded for further proceedings are: paragraph three setting child support, paragraph four setting maintenance, paragraph six which finds the real estate not divisible and orders equal division of the proceeds and paragraph seven (except for the allowance of attorney fees) an adjunct of paragraph six are reversed. Also reversed is paragraph ten, the execution by James of an income assignment.

On remand the trial court should address specifically the status of the VA pension in light of this opinion. The parties are encouraged to present evidence on the feasibility of either a division or partition of the real estate so the relocation is unnecessary for payment of mortgages, liens and loans can be made. Consideration of the following may be of help: partition of the property with the house as a separate tract and the farm tract sold; setting the property over to the wife with James having a lien; and the property to be sold upon the majority or emancipation of the children, *Buthold, supra,* and *Pine, supra,* or allowing the property to remain with both as tenants in common with the wife to live in the house, the husband the right to farm the remainder, and the whole 140 acres sold upon the children being emancipated or reaching majority. To aid the court in reaching a solution that would allow the custodial parent to remain in the home with the children, the parties should present sufficient evidence to the court to effectuate such a result. They should particularly explore the economic effects and practicalities of creating a separate tract that would contain the house. The powers of the court under § 452.330 are broad—it may not only order a sale, but can decree an exchange or conveyance, "or other such dispositions—either between the spouses or with a third person." *Wilhoit v. Wilhoit,* 599 S.W.2d 74, 80 (Mo.App.1980).

It is regretable that this court could not enter the judgment that should have been entered. There just is not a sufficient record to do so. *In re Marriage of May,* 664 S.W.2d 20, 21 (Mo.App.1984). *Cf. In re Marriage of Powers,* 527 S.W.2d 949, 954 (Mo.App.1975). The interrelation of the division of the home, the valuation and determination of status of the VA pension, and duration of the maintenance upon the whole scheme of the judgment entered and their "ripple effect" on the entire difficult solution cause a reversal on all matters other than the granting of the dissolution and the granting of custody. Although final disposition is delayed, a piece meal solution is avoided and the parties will be given the chance to present to the trial court sufficient evidence to reach a just conclusion, as to support, maintenance and the divisions of property. *In re Marriage of May, supra.*

The judgment is affirmed in part, reversed in part and remanded with directions in accordance with this opinion.

All concur.