**Donna Clidene BURRUS, Respondent,**

v.

**Elvy Ray BURRUS, Appellant.**

**No. WD 39957.**

Missouri Court of Appeals, Western District.

June 28, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1988.

James V. Nichols, Lamar, for appellant.

Chris Hoberock, Ewing, Carter, McBeth, Smith, Gosnell, Vickers & Hoberock, Nevada, for respondent.

Before MANFORD, J., Presiding, and TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Elvy Ray Burrus appeals from a decree of dissolution. He complains of the trial court's classification and division of separate and marital property and challenges awards of maintenance and attorney's fees to Donna Clidene Burrus. The judgment is affirmed.

Ms. Burrus instituted the dissolution action after twenty-three years of marriage to Mr. Burrus. At the time of trial, Ms. Burrus was forty-two years of age and Mr. Burrus was forty-four. There are no living unemancipated children born of the marriage.

At trial, Ms. Burrus appeared in person and by counsel, and Mr. Burrus, although having originally been represented by counsel, appeared pro se.

Ms. Burrus testified that Mr. Burrus did not have time for the family and frequently did not return home until 2:00 or 3:00 in the morning although he customarily finished work between 5:00 and 6:00 p.m. He generally spent evenings at the Eagle's or Elk's Lodges. Although Ms. Burrus suspected that Mr. Burrus was engaged in a relationship with another woman during the latter part of the marriage, Mr. Burrus denied the allegation but admitted a sexual relationship with the woman during the pendency of the dissolution action. Ms. Burrus sought and obtained a restraining order against Mr. Burrus at the time the dissolution action was filed as a result of Mr. Burrus' threatening behavior toward her. Ms. Burrus believed that the threats of violence were precipitated by Mr. Burrus' excessive consumption of alcohol which, in her opinion, substantially contributed to the breakdown of the marriage. Other than for the late-night returns to his home, Mr. Burrus was available to participate in a life with his family only on Sundays.

From the time of the filing of the dissolution petition on March 18, 1987, until the time of trial on June 15, 1987, Ms. Burrus received from Mr. Burrus $500 in cash, $300 per month as temporary maintenance commencing June 12, 1987, and $500 in attorney's fees pursuant to a pendente lite order. Also pursuant to the order, Mr. Burrus was restrained from molesting or disturbing the peace of Ms. Burrus and restrained from transferring, concealing, encumbering or otherwise disposing of marital assets.

Each party testified in great detail with respect to values of properties acquired during the marriage. The parties disagreed with respect to values of numerous items of tangible personal property, a detailed list of which is unnecessary for the purposes of this opinion. The parties also disagreed over the value of the marital residence, which Ms. Burrus' evidence placed at $5,500 and Mr. Burrus' evidence at $10,000.

Additional facts relevant to Mr. Burrus' points on appeal are provided where relevant within the discussion of Mr. Burrus' allegations of error.

I

Mr. Burrus first alleges that the trial court erred in awarding Ms. Burrus $500 per month maintenance.

Section 452.335.1, RSMo 1986, provides that the trial court may grant a maintenance order only if it finds the spouse seeking maintenance lacks sufficient prop-

erty to provide for his or her reasonable needs and is unable to support him or herself through appropriate employment. To determine the amount and duration of maintenance, the court shall consider seven relevant factors set forth in subsection 2 of the statute.

■ The first argument asserted by Mr. Burrus as a ground for his position is that Ms. Burrus has sufficient property to provide for her reasonable needs. Ms. Burrus should not be required to dispose of her assets or consume her share of the division of property in order to meet her living expenses before she is entitled to maintenance. *Johnson v. Johnson*, 671 S.W.2d 426, 428 (Mo.App.1984). Of the property set apart to Ms. Burrus, only a $15,000 certificate of deposit is income-producing. There is an additional possibility of interest income which Ms. Burrus may derive from sale of cattle, which had been ordered sold, assuming that the money were invested. The evidence, however, does not indicate how much income might be expected from the investments, nor does it indicate by what percentage any interest income would be offset by a correspondent loss of principal by inflation. *See In re Marriage of Pitluck*, 616 S.W.2d 861, 864 (Mo.App. 1981).

■ Mr. Burrus further asserts as grounds for trial court error in awarding maintenance that the evidence showed that the 42-year-old wife is able-bodied, intelligent and very capable of doing "just about any type of work." The evidence, however, supports the trial court's appropriate exercise of discretion in awarding maintenance. The parties were married for over twenty-three years. During that time Ms. Burrus gave birth to and raised four children and was primarily responsible for managing the household. She graduated from high school and took four college courses. During the last few years of marriage, Ms. Burrus taught a head-start program for nine months of the year and earned $425 per month for the nine-month period. She drew unemployment during the summer. Prior to the head-start position, Ms. Burrus had intermittent employment experience outside the home. She worked for a clothing manufacturer; she worked as a cook-dishwasher, drove a school bus, and made tents on a production line. Ms. Burrus sought these employment situations in between the four pregnancies while, at the same time, she raised the children and took care of the home.

The marriage was of long duration, and Ms. Burrus was dependent upon her husband's earnings to maintain the standard of living established during the later years of the marriage.

Ms. Burrus reported monthly living expenses in the amount of $968 with income for nine months per year of $425 per month; for the three summer months she drew unemployment benefits. Mr. Burrus' employment provided a gross annual income ranging from $29,000 to $30,000 per year during the latter years of the marriage. Mr. Burrus has not complained of inability to pay maintenance. The trial court's award of maintenance is supported by the record.

■ In the alternative, Mr. Burrus argues that, even if it were proper for the trial court to award maintenance in the amount of $500 per month, the award should be of limited duration. Mr. Burrus relies on *Doerflinger v. Doerflinger*, 646 S.W.2d 798 (Mo. banc 1983), for the proposition that "rehabilitative maintenance" should be awarded for a term reasonably sufficient to receive job training, education, or medical recovery. Rehabilitative maintenance is appropriate only where there is substantial evidence that the party seeking maintenance will or should become self-supporting. *Id.*, 646 S.W.2d at 802. Mr. Burrus does not cite any evidence in the record to substantiate his assertion relative to rehabilitative maintenance.

■ Mr. Burrus also argues that, unless a maintenance award of limited duration is entered now, he will be forced to return to court in the future to obtain a modification. The court, however, should not speculate on what the future might justify; rather, such a determination should be made in the future in a proceed-

ing for modification of the award at such time as the court may have evidence of any changed circumstances before it. *In re Marriage of Powers*, 527 S.W.2d 949, 955–56 (Mo.App.1975). In determining the spouse's ability to support him or herself in the future, the trial court may consider probable future prospects, but the evidence must justify the inference that the spouse will realize such expectations. *In re Marriage of Goodding*, 677 S.W.2d 332, 337[6] (Mo.App.1984). Maintenance shall not be prospectively decreased or terminated if there is no evidence nor reasonable expectation that the circumstances of the parties will be markedly different in the future. *Id.* at 337[5]. There is no evidence in the record which would indicate that, in the foreseeable future, Ms. Burrus would have sufficient skills to enable her to support herself at a standard to approximate the standard of living which has been established during the marriage. There is no substantial evidence in the record to indicate that any other circumstances would be significantly different in the future from those Ms. Burrus experienced at the time of trial. At such time as Mr. Burrus might be able to do more than merely speculate with respect to changed circumstances, he may then choose to seek modification of the maintenance award.

## II

Mr. Burrus next claims trial court error in setting apart to Ms. Burrus as her separate property certain items of household furnishings and four lots in Milo, Missouri.

■ Property acquired subsequent to the marriage is presumed to be marital property. § 452.330.3. The spouse claiming the property as separate property has the burden to rebut the presumption by clear and convincing evidence. *McDowell v. McDowell*, 670 S.W.2d 518, 523 (Mo.App. 1984). The claiming spouse rebuts that presumption by showing by clear and convincing evidence that his or her acquisition of the property falls within one of the exceptions of § 452.330.2. Ms. Burrus received the household furnishings through bequests from her grandfather. Mr. Bur-

rus claims that Ms. Burrus sold furniture acquired during the marriage when she received her grandfather's furniture and, thus, evidenced her intent to contribute the furnishings to the marital estate. Mr. Burrus, however, presents no evidence in the record to suggest Ms. Burrus did other than to contribute the proceeds of the sale of the marital furniture to the marriage.

■ Mr. Burrus relies upon *Boyce v. Boyce*, 694 S.W.2d 288 (Mo.App.1985), wherein the wife's daily use of an automobile which was originally the husband's separate property was interpreted as evidence of the husband's intent to convert the automobile to marital property. The case is distinguishable. The property in *Boyce* was a vehicle, not tangible personal property used within the household. A vehicle rapidly depreciates and is less likely than more durable items such as furniture, silver, and china to retain its value throughout a marriage. A spouse's understanding that property, through use of the other spouse, will depreciate substantially during a marriage may be interpreted as evidence of intent not to attempt to preserve the separate character of the property.

Mr. Burrus appears also to argue that the use of separate property by the other spouse automatically converts separate property to marital property. He cites no authority for this proposition. Were his proposition accepted, any and all property acquired in the manner set forth in § 452.330.2 and subsequently shared within a household would be deemed marital. To retain the separate character of such property, one spouse would have to segregate the property from the general household or to declare the property "off bounds"—neither of which acts would tend to foster a policy of marital harmony.

Mr. Burrus additionally relies on *Cartwright v. Cartwright*, 707 S.W.2d 469, 472–73 (Mo.App.1986), seeming to suggest that Ms. Burrus co-mingled the personal property with marital property thereby transmuting the separate property to marital property. Assuming, arguendo, that the *Cartwright* reasoning were accepted by this

court, *Cartwright* is not applicable and an extended discussion distinguishing the case would be of no precedential value. There is substantial evidence in the record to support the trial court's setting apart to Ms. Burrus the tangible personal property inherited by Ms. Burrus from her grandfather, and Mr. Burrus has advanced no viable argument to the contrary.

■■■ The evidence relevant to the four parcels of real estate at Milo, Missouri, valued in total at $500, reflects unusual machinations by the parties at the time the lots were acquired. The lots were devised by Ms. Burrus' grandfather to her and her brother. Ms. Burrus testified that her brother could not be found at the time of her grandfather's death. Mr. Burrus filed a claim against the estate in the amount of $1,800 for care rendered to his wife's grandfather although Ms. Burrus had actually rendered the care. To satisfy the claim, the lots were "sold." Mr. Burrus "bid the property" to "satisfy his claim." The lots were titled in Mr. Burrus' name, according to the testimony, because Ms. Burrus' probate counsel advised her that, as executrix, she could neither acquire the lots nor have them titled in her name.

All evidence with respect to the acquisition of the lots was adduced through Ms. Burrus' testimony with which Mr. Burrus affirmatively concurred. Additionally, Ms. Burrus testified that she never intended to make a gift of the property to Mr. Burrus. Mr. Burrus did not dispute this testimony. Moreover, Mr. Burrus acquiesced in his wife's characterization of the property as her separate property. When the court asked Mr. Burrus whether or not he had any quarrel with any item his wife claimed as her separate property, which was set forth in an exhibit which Mr. Burrus reviewed, Mr. Burrus disagreed only with Ms. Burrus' claim to the furniture received from her grandfather. Later in the trial, Mr. Burrus offered to assist his wife in cleaning up the lots "so she could sell them better." Not having disputed Ms. Burrus' claim that the lots were her separate property at trial, having made no claim to the lots at trial, and having judicially admitted,

in fact, that the lots were Ms. Burrus' separate property, Mr. Burrus may not now complain of trial court error in setting the lots apart to Ms. Burrus.

### III

Mr. Burrus next alleges trial court error in dividing the marital property. His point relied on asserts that the error lies in the court's award of sixty percent of the marital property to Ms. Burrus, according to Mr. Burrus' values. The point does not otherwise specify wherein and why the trial court erred. Mr. Burrus' argument, however, appears to allege error in the trial court's failure to assign values to the property.

■■■ In dividing marital property, the trial court must make a just division but it need not make an equal division. § 452.330; *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). The trial court is not required to make specific findings of fact as to the value of the items of marital property awarded in a decree unless the parties so request. The appellate court is able to evaluate the trial court's division of marital property based upon the evidence in the record, presuming the evidence is sufficient. *Id.* In the present case, the record is adequate with respect to each party's evidence of values of properties, evaluating the evidence is within the discretion of the trial court, and Mr. Burrus has no basis for complaint in this regard. Using Ms. Burrus' valuations, she received $23,638.18 value of property and Mr. Burrus received $25,197.31. Using Mr. Burrus' valuations, Ms. Burrus received $29,780 value and Mr. Burrus received $19,718 value. Even if Mr. Burrus' valuations are accepted, as he urges, the awards to each party, although unequal, are well within the trial court's discretion under the factors enumerated in § 452.330 as applied to the facts of this case.

### IV

■■ Mr. Burrus complains of the trial court's award to Ms. Burrus of attorney's fees in the total amount of $2,200, $500 of which had been awarded on wife's motion

for temporary allowances and had been paid by Mr. Burrus at the time of the trial. He asserts that, as a result of the property and debt allocation and the maintenance award to Ms. Burrus, she was capable of paying her own attorney's fees.

The award was within the trial court's discretion. Section 452.355 authorizes the trial court, after considering all relevant factors, to order one party to pay a reasonable amount for the other's attorney's fees. Ms. Burrus' total attorney's fees were $2,725. The court may consider the conduct of the party in causing the other party to incur fees. Ms. Burrus was forced to seek a restraining order and temporary injunction against Mr. Burrus to prevent him from molesting her and disturbing her peace and from transferring or otherwise disposing of marital assets. Mr. Burrus sold ten head of sheep in violation of the restraining order. Mr. Burrus failed to file a responsive pleading. He failed to answer interrogatories and failed to produce documents. Ms. Burrus therefore found it necessary to file additional motions and to obtain independently information important to her trial preparation. Even with maintenance payments, Mr. Burrus' average gross income was twice that of his wife. Mr. Burrus received a fair and equitable portion of the marital property. The award of attorney's fees to Ms. Burrus was not unreasonable.

Having reviewed the record within the scope of review set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), the judgment is affirmed.

All concur.